2021 IL App (1st) 191921

No. 1-19-1921

September 27, 2021

Modified Upon Denial of Rehearing December 13, 2021

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
|---|---|---|
| | ) | of Cook County, Illinois |
| Plaintiff-Appellee, | ) | |
| | ) | No. 16 CR 07873 |
| v. | ) | |
| ARTHUR CAIN | ) | The Honorable |
| | ) | James B. Linn |
| Defendant-Appellant. | ) | Judge Presiding |
| | ) | |

_____

JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Hyman and Justice Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1     A jury found Arthur Cain guilty of murder and concealment of a homicidal death. On

appeal, Cain contests the sufficiency of the evidence and argues that the trial court committed

reversible error by (1) denying his motion to suppress statements, (2) failing to admonish the

venire in accord with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), and (3) overruling

his objections to the prosecutor's closing argument. We hold that the State failed to overcome the

presumption of inadmissibility for the statements police did not electronically record and that the

trial court violated Rule 431(b). Because the medical examiner could not establish the cause of death with medical certainty, we find the evidence closely balanced. Accordingly, we find the trial court's errors require reversal and remand for a new trial.

¶ 2                                                      I. BACKGROUND

¶ 3     On December 26, 2015, at approximately 9 a.m., Tiffany Mitchell saw a man rolling a red suitcase on the sidewalk past her house. The next day her son told her that police found a red suitcase containing a woman's corpse in a nearby alley. Mitchell went to the scene and told police about the man she had seen on December 26. Two weeks later, on January 8, 2016, while Mitchell rode on a city bus, she again saw the man she had seen rolling the red suitcase. She exited the bus and flagged down a police officer. Mitchell pointed to Cain as the man who was rolling the red suitcase. The officer took Cain to the police station for questioning. Police made no video recording as they questioned Cain. Prosecutors charged Cain with first degree murder and concealment of a homicidal death.

¶ 4     Cain moved to suppress the statements he made to police. Detective James Braun testified that Dr. Stephanie Powers, who performed the autopsy on Dominique Ferguson, the body in the red suitcase, had not drawn any conclusion about whether the death resulted from homicide before Braun questioned Cain. Braun said he reminded Cain of his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), and Cain agreed to speak with him. The court stated:

> "I don't believe, listening to the detective and his manner of investigating this case,
> that [Braun] was purposely trying to avoid putting this person, Mr. Cain, the
> petitioner, in a room that had taping equipment just to manipulate the law and to
> slip something by or to find some loophole."

The court made no finding regarding the voluntariness of the statement but held that the failure to record the statement did not render it inadmissible.

¶ 5 During *voir dire*, the court told the venire that Cain had a right not to testify and asked the venire members whether they understood and accepted that principle, but the court never told the venire that they could not consider Cain's decision not to testify as a reason for finding him guilty. Cain's attorney did not object to the court's questions.

¶ 6 Tonya Ferguson, Dominique's mother, testified that Dominique never used drugs. On Christmas morning 2015, Dominique's phone rang repeatedly, and Dominique went out around noon. When she did not return, Tonya thought Dominique must have met up with her boyfriend, Shawn. Lavonda Blair, a friend of Dominique, testified that she checked a phone Dominique sometimes used. Cain had left a voicemail message on the phone. In an angry voice, Cain had said, "if you don't call me or if I don't see you, don't ever call me again."

¶ 7 Braun testified that at the police station on January 8, 2016, Cain said he wanted to have children with Dominique. Dominique was at his home on Christmas Day 2015, and they had sex. Cain got up, leaving Dominique in the bed. A few hours later Cain noticed that Dominique was not moving. He checked her and found no signs of life. He panicked. After a sleepless night he decided to buy a suitcase and use it to dispose of her body. Cain said Dominique did not use drugs.

¶ 8 Donna Papsun, a toxicologist, testified that she tested Dominique's blood for "about 250 routine recreational and therapeutic drugs as well as alcohol." She found no indication of drug use. She admitted that changed protocols expanded the list of drugs for which to test. The test performed on Dominique's blood would not have shown whether Dominique used some forms of "fentanyl and some additional novel opioids." Papsun admitted that toxicologists always need to

develop new tests for the latest drugs: "we're trying to develop toxicology testing for whatever is emerging and developing that testing honestly can take months so we're constantly playing this catch-up game with these emerging substances." She said a foam cone, "frothy spit emitting from the mouth or the nose," can occur in opioid overdoses.

¶ 9    Dr. Powers testified that the autopsy of Dominique showed no signs of disease or injury. She found a small foam cone, but she said that in this case the small amount of foam probably exuded from Dominique's nose in the process of decomposition in the suitcase. Opioid overdoses usually result in larger foam cones, and foam cones can result in several ways unrelated to drug use. Powers testified that most overdose deaths involving fentanyl also involved more common drugs, like heroin and cocaine, for which the toxicologist tested Dominique's blood. Dominique's corpse had petechiae, "which are small hemorrhages that are caused when you have an increase in blood pressure." Powers said, "petechiae are often seen in cases where you have some sort of compressional asphyxia component to a death." She concluded that Dominique died due to "[h]omicide by unspecified means favor asphyxia."

¶ 10   On cross-examination, Powers clarified her findings in the following exchange:

"Q. [Y]ou can't tell us with any certainty what killed Dominique Ferguson?

A. No.

Q. You can't tell us with any certainty that Dominique Ferguson was even killed?

A. I guess.

Q. How is that?

A. So as I explained before, homicide by unspecified means is essentially a diagnosis of exclusion. We have no reason for her to be dead by natural disease processes which include infectious processes or toxicologic means. So that essentially excludes a natural death or a suicidal death or an accidental death by perhaps a toxic injection. And given the circumstances of her being found in a suitcase naked placed in an alley, medicine is not performed in a vacuum. So, we look at all of the findings of our ancillary studies and the scene investigation to help us come to a cause and manner of death. And I believe in this case that homicide by unspecified means favor asphyxia and manner homicide is the best way to have certified this case."

¶ 11    Powers admitted that petechiae can result from a number of common occurrences, like sneezing or coughing, and can persist for some time. Powers found no damage to Dominique's face and no perioral trauma, although such damage may occur in suffocation.

¶ 12    The prosecutor argued in closing, "[Dominique] left her mother, her grandmother, her aunt's, her cousin's, and most importantly her little baby daughter." The court overruled Cain's prompt objection. Cain did not object to two further mentions of Dominique's child. The court overruled Cain's prompt objection to the prosecutor's argument, "you heard the doctor testify about her opinion that in this case there was no uncertainty as to one thing. She died at the hands of another person." The prosecutor later said, without objection, "[Dominique] is not alone. Today she has the 12 of you. And although nothing that any of you can do alone or collectively will ever bring Dominique back, you can make sure she didn't die in vain."

¶ 13    The jury found Cain guilty of first degree murder and concealment of a homicidal death. The court sentenced Cain to life in prison. Cain now appeals.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal Cain argues (1) the court should have suppressed all of Cain's statements to police, (2) the court committed plain error in *voir dire*, (3) the prosecutor's closing argument deprived Cain of a fair trial, and (4) the evidence does not show that any crime caused Dominique's death.

¶ 16                              A. Motion to Suppress

¶ 17    Section 103-2.1(b) of the Code of Criminal Procedure of 1963 (Code) provides:

"An oral, written, or sign language statement of an accused made as a result of a

custodial interrogation conducted at a police station or other place of detention shall

be presumed to be inadmissible as evidence against the accused in any criminal

proceeding brought under Section 9-1, *** unless:

(1) an electronic recording is made of the custodial interrogation; and

(2) the recording is substantially accurate and not intentionally altered." 725

ILCS 5/103-2.1(b) (West 2018).

¶ 18    The State admits police had Cain in custody on January 8, 2016, when they questioned him about Dominique's death. Braun's claim that he did not regard Cain as a murder suspect at the time of the questioning has no bearing on the applicability of the statute. *People v. Little*, 2016 IL App (3d) 140124, ¶¶ 47-48. The statute makes any statement presumptively inadmissible if "the declarant [is] facing murder charges as part of a criminal proceeding when the State seeks to introduce the declarant's self-incriminating statements as evidence against the declarant."

(Emphasis omitted.) *Little*, 2016 IL App (3d) 140124, ¶ 48. Because the State introduced Cain's statements as evidence against him in a murder prosecution, the failure to record the questioning electronically made the statements presumptively inadmissible. *Little*, 2016 IL App (3d) 140124, ¶ 48; *People v. Clayton*, 2014 IL App (1st) 130743, ¶ 37.

¶ 19   The State may overcome the presumption of inadmissibility with proof by a preponderance of the evidence that the statements were voluntarily given and are reliable, based on the totality of the circumstances. *People v. Green*, 2014 IL App (3d) 120522; see 725 ILCS 5/103-2.1(f) (West 2016). In determining whether the defendant made the statements voluntarily, the court should consider "the defendant's age, education, intelligence, mental capacity, physical condition at the time of questioning, the legality and duration of the detention and questioning, whether the defendant was advised of his constitutional rights, and any physical or mental abuse by police including the existence of threats or promises." *Green*, 2014 IL App (3d) 120522, ¶ 53. Braun testified at the hearing on the motion to suppress that he informed Cain of his *Miranda* rights. The State presented no other evidence of voluntariness at the hearing on the motion to suppress. The record of the trial and posttrial proceedings shows that Cain, over 50 years old, had earned a G.E.D. in prison. The statute creates a presumption of inadmissibility, and the State had the opportunity to present evidence that the statements made during the interview were voluntary and reliable but failed to do so. By failing to present any evidence related to factors crucial to a determination of whether the defendant spoke voluntarily to police, the State failed to overcome the statutory presumption. The trial court erred by denying Cain's motion to suppress the unrecorded statements made to police.

¶ 20                                    B. Rule 431(b)

¶ 21    The State concedes that the trial court erred by failing to ask the venire members whether they understood and accepted the principle that, if the defendant chose not to testify, the jury could not hold that choice against him. See Ill. S. Ct. R. 431(b) (eff. July 1, 2012). Cain concedes that his attorney failed to object to the mistake. Cain claims that the closely balanced evidence makes the mistake amount to plain error (see *People v. Sebby*, 2017 IL 119445, ¶ 51), while the State claims that the mistake does not require reversal because of the overwhelming evidence against Cain. We address the issue of whether the evidence counts as closely balanced together with Cain's argument that the evidence did not prove an essential element of the offense.

¶ 22                              C. Sufficiency of the Evidence

¶ 23    Cain contends that the State did not prove the *corpus delicti*. In murder prosecutions, the State must prove both that a death occurred, and a criminal agency caused the death. *People v. Ehlert*, 211 Ill. 2d 192, 202 (2004).

¶ 24    The State's medical examiner, Dr. Powers, admitted that she could not determine what killed Dominique. Before police interviewed Cain, two weeks after the autopsy, Dr. Powers classified the cause of death as undetermined. After the interview, Dr. Powers certified the case as "homicide by unspecified means favor asphyxia." Cain claims the evidence does not show beyond a reasonable doubt that a criminal agency caused the death.

¶ 25    The State relies on *People v. McVay*, 2019 IL App (3d) 150821, in support of the conviction. In that case, as in the case now before the court, the medical examiner ruled the death "a homicide, by unspecified means since the mechanism of death could not be explained by the anatomic findings." *McVay*, 2019 IL App (3d) 150821, ¶ 42. The medical examiner in McVay "based his ruling on the fact that [the victim] was found naked in a remote wooded area far from

home with her arms over her head. He ruled out other potential causes of death, such as death by natural causes, suicide, and accident." *Id*. The appellate court found the evidence sufficient to support a conviction for first degree murder.

¶ 26    Cain points out that the evidence here provides far less of a basis for finding that criminal acts caused the death. The victim in *McVay* suffered head trauma around the time of death, and her fingernails held DNA with markers matching the markers for McVay's DNA. Other evidence, including McVay's relationship with the victim and his use of her car and credit cards after her death further supported the conclusion that criminal acts caused her death. Dominique's body showed no similar signs of trauma around the time of death, and Cain, unlike McVay, did not use Dominique's property or do anything after the death other than conceal it.

¶ 27    Several cases from other jurisdictions address the issue of what evidence will permit a court to infer criminal acts caused a death. "[W]here a coroner could not determine the cause of death of a victim whose body was badly decomposed and partially eaten, the State proved the corpus delicti beyond a reasonable doubt based on evidence that the victim, when she was last seen alive, was in apparent good health, and with nothing to show any mental disturbance ***." *Benson v. State*, 754 S.E.2d 23, 27 (Ga. 2014). In *West v. State*, 75 P.3d 808, 813-14 (Nev. 2003), the court found sufficient evidence of *corpus delicti*, notwithstanding the actual cause of death could not be determined. The court also found "the circumstances of [the victim's] disappearance, the discovery of her body in a garbage can that was sealed with great effort to make it airtight and located in a storage unit that West rented, the admission that West put [the victim] in the garbage can, and the discovery of the plastic bag that covered [the victim's] nose and mouth, clearly created a reasonable inference of *** death by criminal agency." *Id*. at 814. A California court stated, "the

fact that [the] body was found in an alley wrapped in a blanket furnishes at least a *prima facie* showing of criminal agency, inasmuch as the bodies of victims of accidental deaths typically would not be disposed of in this manner." *People v. Huynh*, 151 Cal. Rptr. 3d 170, 181 (Ct. App. 2012). A Kentucky court held that an attempt to conceal a death, as evidence of a guilty conscience, helps establish the *corpus delicti*. *Fugate v. Commonwealth*, 445 S.W.2d 675, 681 (Ky. 1969), *overruled on other grounds by Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983).

¶ 28    A Massachusetts court found: "The fact that the cause of death was not ascertainable from the body does not of itself preclude the Commonwealth from proving that the victim's death was by violence and the criminal agency of the defendant beyond a reasonable doubt." *Commonwealth v. Nadworny*, 486 N.E.2d 675, 682 (Mass. 1985). In *Nadworny*, the prosecution presented evidence of the victim's good morale to establish that she did not commit suicide. The court stated:

> "The jury could also reasonably infer that Lisa did not die of natural causes. She suffered no major illnesses ***. There was no indication in the testimony of her mother, friends, and other people who knew her that she was in ill health. *** There was no evidence of accident. Dr. Butt testified that there was no evidence of major trauma to the body or broken bones, no pills were found in the stomach, and no large cranial hematomas." *Nadworny*, 486 N.E.2d at 683.

¶ 29    However, other cases indicate that courts may find the *corpus delicti* unproven where the medical examiner could not determine the cause of death and other evidence showed only that the defendant met with the deceased on the day of his death or disappearance. See *Thornburgh v. State*, 815 P.2d 186, 187-88 (Okla. 1991); see also *Frutiger v. State*, 907 P.2d 158 (Nev. 1995).

¶ 30    Here, Dominique's good health, no evidence of disease or accident, and with evidence that Dominique did not use drugs, considered in light of Cain's attempts at concealment, support the inference that a criminal agency caused Dominique's death. Accordingly, we find the evidence sufficient to support the conviction.

¶ 31    However, we find the evidence is closely balanced. To make that determination we "evaluate the totality of the evidence and conduct a qualitative commonsense assessment," looking to both the elements of the charged offenses and credibility. *People v. Sebby*, 2017 IL 119445, ¶ 53. Here, there was one issue central to both charges: whether actions of a person other than the victim caused the death. To be guilty of first degree murder, Cain must have "perform[ed] the acts which cause[d] the death." 720 ILCS 5/9-1(a) (West 2020). To be guilty of concealment of a homicidal death, Cain must have concealed a death "with knowledge that such other person has died by homicidal means." *Id.* § 9-3.4(a). The statute defines "homicidal means" as the act or acts of a person "that cause the death of another person." *Id.* § 9-3.4(b-5). Hence, for first degree murder, Cain must have caused Dominique's death; for concealment of homicidal death, Cain must have either caused her death or must have known that her death was caused by another person.

¶ 32    In *Sebby*, our supreme court clarified that the quintessential closely balanced case is one that boils down to a contest of credibility, defined as evidence showing opposing versions of event without extrinsic evidence to corroborate or contradict either version. *Sebby*, 2017 IL 119445, ¶ 63 (discussing *People v. Naylor*, 229 Ill. 2d 584 (2008)). Here we have nothing more than a variation on *Sebby*'s theme. Cain confessed, but only to concealing Dominique's death. He did not admit to killing her and did not admit to any knowledge of how her death came about. The medical examiner could not determine with medical certainty how Dominique died and only concluded she died by

homicidal means because the medical examiner could not come up with any other explanation. Indeed, the primary basis for her opinion was the manner in which Dominque's body was found, but it is undisputed that Cain disposed of her body. There is no physical evidence corroborating the State's theory that Dominique died by homicide or, for that matter, if she did die by homicide, that Cain is the one who killed her.

¶ 33 A jury could, of course, conclude that the gap in Cain's confession is a convenient omission, but it is not a "fanciful" one. See *Sebby*, 2017 IL 119445, ¶ 61 (finding evidence closely balanced where neither State's theory nor defendant's theory was fanciful). Cain left Dominique alone for hours, and the medical examiner could not conclusively explain the cause of her death. Cain's actions were not admirable, but the evidence of the commission of a homicide (even if sufficient) was close. *Id.* ¶ 60 ("issue *** does not involve the sufficiency of close evidence but rather the closeness of sufficient evidence").

¶ 34 The court failed to question the venire members about whether they understood and accepted the principle that they must not consider Cain's decision not to testify as a reason to find him guilty. In view of the closely balanced evidence, we find the court committed plain error by violating Rule 431(b). See *id.* ¶ 51. The erroneous admission into evidence of Cain's statements to Braun, in violation of section 103-2.1 of the Code, provides an independent basis for reversing the conviction and remanding for retrial. Because the evidence was close, the trial court's errors require reversal, and we need not address Cain's objections to the prosecutor's closing arguments. Hence, we reverse and remand for a new trial.

¶ 35 On remand, the State may overcome the presumption of inadmissibility of the statements with proof by a preponderance of the evidence that the statements were voluntarily given and are

reliable, based on the totality of the circumstances. *People v. Green*, 2014 IL App (3d) 120522; see 725 ILCS 5/103-2.1(f) (West 2016).

¶ 36                                   III. CONCLUSION

¶ 37    The prosecution failed to overcome the statutorily mandated presumption of inadmissibility for Cain's unrecorded statements to police. Hence, we reverse the trial court's ruling denying Cain's motion to suppress statements. The trial court erred when it failed to question the venire about their understanding and acceptance of the principle that they must not hold against Cain his decision not to testify. The evidence sufficiently supports a finding of guilt, but the State's inability to establish a cause of death leaves the evidence closely balanced on the issue of whether the State proved a criminal agency caused the death. Because the evidence is closely balanced, the trial court's errors require reversal and remand for a new trial with a Rule 431(b) instruction.

¶ 38    Reversed and remanded.

---

**No. 1-19-1921**

---

| | |
|---|---|
| **Cite as:** | *People v. Cain*, 2021 IL App (1st) 191921 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-07873; the Hon. James B. Linn, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and David T. Harris, of State Appellate Defender's Office (Leah Plachinski, Sarah Free, and Emma Costello, law students), of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Noah Montague, Assistant State's Attorneys, of counsel), for the People. |

---